IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBIN MOSLEY, an individual, | ) |
| | ) 2:11-cv-00440-GEB-DAD |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER GRANTING DEFENDANT'S |
| | ) MOTION FOR SUMMARY JUDGMENT |
| TARGET CORPORATION, and DOES 1 | ) |
| through 20, inclusive, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

Defendant Target Corporation ("Target") seeks summary judgment in this premises liability action under Federal Rule of Civil Procedure ("Rule") 56. Defendant contends the evidentiary record shows it is not liable for the alleged injuries Plaintiff sustained when she tripped on the trivial 0.37-inch-high transition strip in Target's premises. Plaintiff Robin Mosley counters that the motion should be denied because the transition strip is dangerous and nontrivial irrespective of its height since it is made of rubber.

**I. LEGAL STANDARD**

A party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." Thrifty Oil Co. v. Bank of Am. Nat. Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

> [The movant] has both the initial burden of production and the ultimate burden of persuasion on [the motion]. In order to carry its burden of production, the [movant] must either produce evidence negating an essential element of the [plaintiff's claim] or show that the [plaintiff] does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. In order to carry its ultimate burden of persuasion on the motion, the [movant] must persuade the court that there is no genuine issue of material fact.

Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000) (citations omitted). If the movant satisfies its initial burden, "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, *specific facts* showing that there is a genuine issue for trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citation and internal quotation marks omitted). The "non-moving plaintiff cannot rest upon the mere allegations or denials of the adverse party's pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir. 2008) (citation and internal quotation marks omitted).

Evidence must be viewed "in the light most favorable to the non-moving party," and "all reasonable inferences" that can be drawn from the evidence must be drawn "in favor of [the non-moving] party." Nunez v. Duncan, 591 F.3d 1217, 1222-23 (9th Cir. 2010) (citation and internal quotation marks omitted).

Further, Local Rule 260(b) requires:

>           Any party opposing a motion for summary judgment or
> summary adjudication [must] reproduce the itemized
> facts in the [moving party's] Statement of
> Undisputed Facts and admit those facts that are
> undisputed and deny those that are disputed,
> including with each denial a citation to the
> particular portions of any pleading, affidavit,
> deposition, interrogatory answer, admission, or
> other document relied upon in support of that
> denial.

If the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006).

## II. UNCONTROVERTED FACTS

Each party submitted a "Statement of Undisputed Facts" under Local Rule 260(b). Target's evidence supporting certain of its Statement of Undisputed Material Facts ("SUMF") includes a surveillance film and photographs depicting conditions at Target's entry door where the transition strip is located. Mosley objects to this evidence asserting that the transition strip on which she tripped and fell was unsafe for walking. Mosley's objections are overruled since they are only supported by Mosley's allegations. However, Mosley "cannot rest upon [] mere allegations" in her opposition to the motion and was required "to produce evidence that sets forth specific facts showing that there is a genuine issue for trial." Estate of Tucker ex rel. Tucker, 515 F.3d at 1030 (citation and internal quotation marks omitted). The uncontroverted facts are the following.

On December 31, 2009, Mosley entered her favorite Target store in Roseville, California. (SUMF ¶¶ 1, 3.) Mosley "was a regular shopper at this store, shopping there biweekly for a few years." (Id. ¶ 4.) "On

3

this date, she had scheduled a make-up session for her niece Drew and [she] entered the store with her niece and her former sister-in-law Alicia Cantrell." (SUMF ¶ 5.) As Mosley entered the store, she "turned around [backward] . . . to speak to [her] friends." (Decl. of Robin Mosley ("Mosley Decl.") ¶ 5.)

At the entrance of the store, there is "a carpet transition strip nominally 2.6 inches wide that separates the [store's] thicker outer carpet from the thinner inner carpet. . . . The maximum height of the transition strip is approximately 0.37 inches above the carpet." (SUMF ¶ 14.) The transition strip's "leading plastic edge rises 0.16 inches vertically above the carpet." (Id. ¶ 14.) "[A]s Ms. Mosley was turning [her body] to face forward, with her body being at an almost 90 degree angle to the transitional strip, she tripped." (Pl.'s Separate Statement of Undisputed Facts ("Pl.'s SUF") ¶ 7.) When Mosley fell, she was not looking straight ahead. (Dep. of Robin Mosley ("Mosley Dep.") 100:12-21.)

Subsequently, forensic engineer Frank Perez photographed the Roseville Target entrance and the transition strip. (Decl. of Frank Perez ("Perez Decl.") ¶¶ 1, 5 & Ex. A.) "A surveillance camera also captured this incident," recording that "nearly 10 other guests passed over this area within two minutes of plaintiff's fall without any incident." (SUMF ¶ 11.) "The carpet transition strip is fully compliant with the California Building Code and the [Americans with Disabilities Act] requirements for entrance accessibility." (Id. ¶ 16; Perez Decl. ¶¶ 8, 10, 12.)

### III. DISCUSSION

Target argues since the transition strip has a "maximum height of only approximately 0.37 inches," it is "minor and trivial as a matter

4

of law, precluding any liability against [it]." (Mot. 7:1-2, 6:8-9.) Mosley retorts that her "theory of liability is that materials used in the construction of the floor created a set of facts and circumstances which created a dangerous condition, not that the floor had a trivial defect causing [her] injury." (Opp'n 5:4-6.) Specifically, Mosley argues "that the rubber strip intentionally used in construction itself is negligent because of the materials used." (Opp'n 5:16-17.) Mosley submits her declaration in support of this argument in which she declares: "as I was turning to face forward, my rubber shoe simply stopped upon contacting the rubber or plastic strip. I fell because my shoe stopped because rubber hit another rubber-like substance. . . . I am positive that had the material been different, I would not have fallen." (Mosley Decl. ¶ 5.)[1] Mosley also declares: "it is common knowledge that rubber against almost any surface causes a stopping [e]ffect." (Id. ¶ 6.) Target replies that Mosley "has not produced any evidence that the material failed to comply with applicable codes or that supports the ultimate conclusion that the material was improperly used." (Reply 9:23-25.) Target also argues that "[u]nder plaintiff's theory every person crossing the transition strip should trip, yet no one but plaintiff encountered difficulty crossing the transition strip." (Id. 9:17-18.)

Under California law, "[i]t is well settled that a property owner is not liable for damages caused by a minor, trivial, or

---

[1] Mosley's theory about the role of rubber in her fall is put forth for the first time in her declaration in opposition to Target's motion. At no point in her deposition or her complaint does Mosley state that she fell because rubber hit rubber, as she later avers. Indeed, during her deposition Mosley stated that she tripped on the transition strip because her foot caught, not on rubber, but on tape. (Mosley Depo. 99:12-16.)

insignificant defect in [its] property. This principle is sometimes referred to as the 'trivial defect defense,' although it is not an affirmative defense but rather an aspect of duty that plaintiff must plead and prove . . . . Moreover, what constitutes a minor defect may be a question of law." Cadman v. Somerset Gardens Townhouse HOA, 200 Cal. App. 4th 383, 388-89 (2011) (citations and internal quotation marks omitted).

> An initial and essential element of recovery for premises liability [based on a defective transition strip] is proof a dangerous condition existed. The law imposes no duty on a landowner . . . to repair trivial defects, or to maintain its property in an absolutely perfect condition. . . . The decision whether [the transition strip] is dangerous does not rest entirely on [its] size . . . . Although the size [] is a pivotal factor in the determination, a tape measure alone cannot be used to determine whether the defect was trivial. Instead, the court should determine whether there existed any circumstances surrounding the accident which might have rendered the defect more dangerous than its mere abstract depth would indicate. Aside from the size of the defect, the court should consider whether the [transition strip was attended by] some other condition obstruct[ing Mosley's] view of the defect. The court should also consider. . . plaintiff's knowledge of the conditions in the area, whether the defect has caused other accidents, and whether circumstances might either have aggravated or mitigated the risk of injury.

Stathoulis v. City of Montebello, 164 Cal. App. 4th 559, 567-68 (2008) (citation omitted). Therefore, "the court should determine whether there existed any circumstances surrounding the accident which might have rendered the defect more dangerous than its mere abstract depth would indicate." Fielder v. City of Glendale, 71 Cal. App. 3d 719, 734 (1977); Kasparian, 156 Cal. App. 4th at 27.

Here, it is undisputed that the maximum rise of the transition strip was 0.37 inches. (SUMF ¶ 14.) Numerous decisions have held that defects of greater height than this are trivial as a matter of law. See,

e.g., Cadman, 200 Cal. App. 4th at 389 ("conclu[ding] that the defect [of three-fourths to seven-eighths inch depth] is trivial"); Fielder, 71 Cal. App. 3d at 734 ("find[ing] that, as a matter of law, the [three-fourths inch] defect was not dangerous"); Barrett v. City of Claremont, 41 Cal. 2d 70, 74 (1953) (holding that ridge rising one-half inch above the surface of the sidewalk was trivial where it was "much in the same manner as a common doorsill"; and collecting cases "hold[ing] that defects of a greater magnitude than that [] are minor ones"); Balmer v. City of Beverly Hills, 22 Cal. App. 2d 529, 531 (1937) (deciding that "one inch" depression is minor).

Mosley argues that her injury was caused by the "materials used in the construction of the floor," and not "a trivial defect" in the floor. (Opp'n 5:5-6.) Mosley cites her declaration in support of this argument in which she declares: "rubber against almost any surface causes a stopping [e]ffect" and when "rubber meets another rubber-like substance while in motion, [] there is a screeching stop." (Mosley Decl. ¶ 6.) Target objects to these averments arguing they lack foundation and constitute improper opinion testimony. (Reply 3:25-4:24.)

> Federal Rule of Evidence 701 allows a lay witness to give opinion testimony provided it is (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of [the witness's] testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.
>
> Given the Rule's first two limitations, opinion testimony of lay witnesses must be predicated upon concrete facts within their own observation and recollection-that is facts perceived from their own senses, as distinguished from their opinions or conclusions drawn from such facts.

United States v. Durham, 464 F.3d 976, 982 (9th Cir. 2006) (citations and internal quotation marks omitted). Mosley has not shown that what

7

she avers is predicated upon concrete facts within her "own observation and recollection" as distinguished from her unsupported opinions or conclusions. Id. Mosley's "[b]are assertions or unsupported conclusions [about what caused her accident] are not facts sufficient to . . . [oppose] a summary . . . judgment [motion]." Tovar v. U.S. Postal Serv., 3 F.3d 1271, 1279 (9th Cir. 1993) (citation omitted). Further, "[m]ere argument does not establish a genuine issue of material fact to defeat summary judgment." MAI Sys. Corp. v. Peak Computer, Inc., 991 F.2d 511, 518 (9th Cir. 1993).

Target's following evidence controverts Mosley's conclusory causation assertions: a videotape of Mosley's accident and photographs of the entrance shows that the transition strip was well-lit, the area was unobstructed, and the strip's rise is regular in shape and gradual in slope. (Decl. of Kelly Peterson ("Peterson Decl."), Ex A; Perez Decl., Ex. A.) The videotape evidence also shows numerous other patrons walking over the transition strip without experiencing a "stopping [e]ffect" or a "screeching stop." (Id. ¶ 6.) Although the fact that others did not fall does not by itself demonstrate the safety of the transition strip, it does undercut Mosley's argument that the transition strip "was made of a material that would catch any rubber sole[d] shoe." (Opp'n 2:22-23.)

Generally, courts have held that small rises may be trivial as a matter of law, irrespective of the material composing the rise. See, e.g., Barrett, 41 Cal. 2d at 74 (holding trivial "soft and sticky" substance in which plaintiff's "toe 'caught' or 'stuck' . . . retarding her forward motion and throwing her off balance," and rejecting plaintiff's argument "that the physical properties of the [] material distinguish[ed] the present case from those involving trivial defects");

8

Graves v. Roman, 113 Cal. App. 2d 584, 585 (1952) (finding trivial a "metal stripping" of one-eighth inch rise, which plaintiff's "toe kicked" giving "a metallic sound" and "caus[ing] her to fall"). In this case, the evidence shows that the transition strip is a trivial defect that did not pose an unreasonable risk of injury. Therefore, Target's motion for summary judgment is granted, and judgment shall be entered in favor of Defendant.

Dated:   November 14, 2012

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge